SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
JESSE LANGEL,

                         PLAINTIFF,

-against-

EMPIRE KOSHER POULTRY, INC.,

                         DEFENDANT.
-----------------------------------------------------------X

Index No.:

**SUMMONS WITH NOTICE**

Plaintiff's address: 105 Lexington Avenue, 5B, New York, NY 10016.

The basis of venue is the plaintiff's residence.

To the Person Named as Defendant above:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff at the address set forth below, and to do so within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded below.

**YOU ARE HEREBY NOTIFIED THAT** should you fail to appear, a judgment will be entered against you by default for the relief demanded below.

Dated: November 29, 2021

Defendant's address:

Empire Kosher Poultry, Inc.
247 Empire Drive
Mifflintown, PA 17059

Jesse Langel, Esq.
*Pro se*
30 Wall Street, 8th Floor
New York, NY 10005
P: 646-290-5600
jesse@langcllaw.com

Note: The law or rules of court provide that:

    a) If this summons is served by its delivery to you or (for a corporation) an agent authorized to receive service personally within the State of New York, you must answer within 20 days after such service; or

b) If this summons is served otherwise than on a designated in subdivision (a) above, you are allowed 30 days to answer after the proof of service is filed with the clerk of the court.

c) You are required to file a copy of your appearance together with proof of service with the clerk of the court in which the action is brought within ten days of the service of the appearance.

**TAKE NOTICE** that the object of this action and the relief sought is to recover damages and injunctive relief for the defendant's violations of NYGBL § 349 (Deceptive acts and practices unlawful), NYGBL § 350 (False advertising unlawful), common law negligence, gross negligence, recovery of attorneys' fees, and the imposition of punitive damages. Upon your failure to appear, a judgment by default will be taken against you for the sum of $250,000.00 with interest and costs thereon from October 17, 2021.

On October 17, 2021, the plaintiff purchased 7 ounces of packaged Turkey-breast slices containing bar code 071627559653 encased in the defendant's package ("the product"). The purchase was made at Fairway Markets of Kips Bay located at 550 2nd Avenue, New York, NY 10016 ("the store") at 6:28 p.m. The invoice receipt number is S185 R76 T183 C76. The plaintiff paid $6.99 for the product.

Upon information and belief, the defendant is the largest producer of kosher poultry in the United States. The defendant's poultry operations are alleged to be vertically integrated. The defendant "processes" approximately 240,000 chickens per week and 27,000 turkeys per week.

The business of raising turkeys regularly involves severe forms of violence against the animals, such as desnooding, dewinging, toe trimming, spur removal, and intensive confinement with excessively high stocking density; This increases the birds' contact with the litter, causing foot-pad burn, hock burn and breast blisters, injurious feather pecking, and heat stress; forced breeding; and denial of normal socialization and instinctual behaviors. Then, minimally, the process will inevitably culminate in the ultimate act of violence against the turkeys: the involuntary and severely premature death of the animal without anesthesia.

<u>The Advertising Claims at Issue</u>

Among other information and representations, on the package itself, are the following representations:

**HUMANELY RAISED\*\***

**\*\*Meets Empire® Kosher brand's humane policy for raising turkey on family farms in a stress-free environment.**

True and accurate photographs of the front and back of the package are annexed hereto as Exhibit A ("the product") and is incorporated by reference.

In this Notice, the plaintiff refers to the above written language contained in Exhibit A as the above "representation(s)," "claim(s)," "advertising claims," and "misrepresentations."

The above representations, taken as a whole, or in its parts, contain numerous express and implied assertions, which are logically false, literally false, false by necessary implication, misleading, and deceptive. Since the claim as a whole is factually impossible, the defendant lacks reasonable bases to make the above claim(s) regardless of whether they are establishment claims or efficacy claims. Since the claim as a whole is factually impossible, it cannot be proven true with scientific substantiation. Any degree of purported substantiation does not cure the false and misleading net impression(s) given to reasonable consumers acting reasonably, including the plaintiff. The defendant's purported definition of "humanely raised" lacks the specificity necessary to ensure that reasonable consumers acting reasonably would not be misled.

The defendant's advertising claims contain targeted express and implied claims that are aimed at particular consumers who have particular values as to animal welfare and sustainability. The plaintiff was part of a particular consumer group targeted by the defendant. The particular consumer group that the plaintiff is within is a group that is concerned with the humane treatment of animals and sustainability in the animal-production process. The defendant knew, or had reason to know, that the plaintiff would likely be affected by the advertising claims. The plaintiff was directly affected by the advertising claims as intended by the plaintiff. The advertising claims induced the plaintiff's purchase of the product. The defendant placed the product with the above advertising claims into the stream of commerce in order to influence the sale of the product.

The above representations are brand advertising, issue advertising, ideological advertising, and/or values advertising.

"Stress-free Environment"

The defendant's claim that its turkey is raised in a "stress-free environment" is an establishment claim. An establishment claim is a claim that contains express and/or implied statements regarding the amount of support the advertiser has for the product claim. Adequate and sufficiently reliable tests do not support or establish the defendant's express claims and implied claims arising from its claims that its turkey is raised in a "stress-free environment." The "stress-free environment" claim is absolute and unqualified. Under applicable laws, the defendant needed to possess sufficient scientific proof and sufficient consumer-behavioral-perception proof before making the claim to the consuming public.

Upon information and belief, the defendant failed to furnish the substantiation needed for any pre-approval by the Food Safety and Inspection Services (FSIS) for the above claims. Any purported pre-approval by the FSIS represented nonbinding guidance and does not preempt the plaintiff's claims herein pursuant to governing law of the United Stated Supreme Court and governing law of the Second Circuit of the United States.

Moreover, previous response(s) to FOIL request(s) made to the USDA/FSIS, with regard to the above claims, failed to amount to sufficient, reasonable substantiation under prevailing laws, regulations, and under FSIS's guidelines of December 2019: "Animal Welfare and Environment Stewardship." Said previously made FOIL request(s) produced a non-detailed affidavit and vague definition, both which would fail legal standards relevant to all causes of action asserted herein. The defendant's intentional refusal to supply FSIS (at the time of that FOIL response) with

3

documents substantiating its animal-welfare claims reasonably infers that it lacks that substantiation. The defendant possesses all knowledge of its practices, and exploits the fact that the consuming public has no way to verify its advertising claims. The defendant's assertion that its "humanely raised" standard meets its own brand "policy" reasonably infers or implies that no third party inspects and certifies the relevant animal husbandry practices.

The defendant's products were provided an entire section with signage at Fairway Markets of Kips Bay. Many of the defendant's products displayed contain(ed) the above advertising claims placed prominently to draw maximum consumer attention. The defendant's product places the "Humanely Raised" claim in the middle of the package to draw maximum attention to the claim. The defendant's definition of "Humanely Raised" contradicts, conflicts with, and/or unduly restricts the literal definitions of "humane," "humanely," and "humaneness" of numerous dictionaries, including Oxford English Dictionary, Merriam-Webster, dictionary.com, and Collins Dictionary. Above its "Humanely Raised" language, the defendant adds another two claims in capital letters ("RAISED WITHOUT ANTIBIOTICS") and ("NO ADDRED GROWTH HORMONES"). These claimed practices are already prohibited under federal law or are not done in commercial practice, so advertising them is inherently misleading by consumers acting reasonably despite any disclaimers or allowances under regulatory law, which operate as floors—not ceilings. The defendant's use of a crop field and a red barn next to its "Humanely Raised" claim is false and misleading because, upon information and belief, its turkeys are not raised on such a field. Nor are they raised in such a barn. Such imagery pushes false impressions of pastoral settings.

The defendant does not give reasonable consumers acting reasonably any indication how it substantiates the complete absence of any and all relevant stress-factors in the turkeys' environment(s) including: physical stress, physiological stress, climatic stress, environmental stress, nutritional stress, pathological stress, social stress, and psychological stress.

The defendant purports to be vertically integrated or vertically coordinated, which refers to the synchronization of the successive stages of a production and marketing system. The defendant apparently controls its breeder farms, egg hatcheries, feed mills, grow-out conditions, processing plants, and marketing operations.

The defendant's claim that its turkey is raised in a "stress-free environment" is a dangling comparison because it fails to quantify the prior environment used as a reference point. Nor does the defendant define "stress" or "stress-free" to aid the reasonable consumer acting reasonably when making purchasing decisions. Nor does the defendant define or give reasonable guidance as to what it means by "environment." The word environment is defined by Oxford Dictionary as "the surroundings or conditions in which a person, animal, or plant operates." The defendant uses the singular word "environment" when, as a vertically integrated processor, the defendant operates up to six different environments, some or all of which serve different purposes. Reasonable consumers acting reasonably would believe the defendant's factual assertion and implication of one "environment" is reality. The defendant uses the claim that it is raising turkey on family farms because such a claim implies numerous, beneficial attributes for workers, animals, and the environment. The family-farm narrative implies falsely that the defendant provides, or ensures the provision of, personalized care to animals. But such care is impossible to give under the industrialized conditions needed to process its roughly 267,000 birds per week.

Stress is an important part of a turkey's life. Eustress is a necessary element of biological adaptation. Turkeys are continuously under different stressful influences. Many poultry keepers—let alone consumers—do not fully understand the complexity of stress in turkeys, its etiology, mechanism, manifestations and consequences for the poultry. Contrary to the defendant's express and implied claims, turkeys are exceptionally stress-susceptible. Furthermore, turkeys have genetic predispositions to varying degrees of stress and stress resistance. Some stress reactions are acutely lethal in turkeys. The defendant's business practice is organized around a violent, inherently stressful environment: forcefully growing and prematurely mutilating poultry. The defendant uses the social and psychological defense mechanism of "humanewashing" in order to manipulate its humane-minded consumers into buying the defendant's inhumanely produced products.

The above misrepresentations exploit the misguided trust of unwitting consumers in an area where there is a lack of adequate regulation or mechanisms for enforcement. The above representations fabricated by the defendant are vague, subject to differing interpretations, and are made possible by weak or non-existent regulatory enforcement.

The plaintiff will produce numerous surveys and studies showing that consumers are materially influenced, and make purchasing decisions based on, claims of "humanely raised" products. For example:

> When asked, "what is the most you are willing to pay for high quality, humanely raised products," 34% of respondents to a 2013 survey conducted by American Humane said 10-20% more, while 28% of respondents said they would pay 20-30% more. — Humane Heartland Farm Animal Welfare Survey, American Humane Association, 2013.

The defendant's turkeys, including the one whose carcass is contained in Exhibit A, lived and died on an industrial production line.

## New York General Business law §§ 349 (Deceptive acts and practices unlawful) and 350 (False advertising unlawful)

The defendant's acts and practices as alleged herein are consumer oriented, misleading in a material way, and caused the plaintiff's injuries asserted below. Therefore, the defendant is liable to the plaintiff under New York General Business law § 349.

The defendant is liable for its false advertising under New York General Business Law § 350. Aside from its independent violations of NYGBL § 350, the defendant breached Agriculture and Markets Law §§ 199-a, 201, and 202-a for its misbranding and mislabeling practices, which amount to violations of NYGBL § 350.

## Injunctive Relief Warranted under NYGBL § 349(h) and NYGBL § 350

The New York State legislature amended both NYGBL §§ 349 and 350 to add a private right of action for money damages, injunctive relief and reasonable attorneys' fees.

The statute reads in relevant part:

General Business Law § 349 Deceptive acts and practices unlawful

...

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

The defendant's meat products containing its "Humanely Raised" advertising claims are sold at retailers such as Fairway, Trader Joe's, and Whole Foods in New York. Without injunctive relief, the plaintiff will be unable to shop for basic groceries and provisions at these stores without being confronted by the defendant's injurious, false and misleading advertising claims. The plaintiff is a consumer typically targeted at the above stores by the defendant. The plaintiff physically witnesses the falsely advertised products which are aimed at convincing him and the community of facts that are harmful, unlawful, threatening, recurring, and imminent. The defendant's false-advertising claims represent negative externalities similar to environmental pollutants and nuisances. The consuming public at large—which includes the plaintiff—need not actually be "consumers" as restrictively defined in other contexts in order to suffer injury and future injury for purposes of seeking an injunction. The consuming public at large—which includes the plaintiff—need not justifiably rely on the advertising claims to be actionable for purposes of seeking an injunction. New York State has a strong public interest in truthful advertising in the area of animal-welfare advertising. The public interest of New York State outweighs the defendant's commercial need to publish its untruthful advertising.

Negligence

The defendant's acts and practices, including its violations of Agriculture and Markets Law §§ 199-a, 201, and 202-a, amount to duties breached to the plaintiff. The plaintiff was within the scope of statutory protection of Agriculture and Markets Law §§ 199-a, 201, and 202-a. "Violations of this article relating to sale of adulterated food is 'negligence per se'". Catalanello v. Cudahy Packing Co., 1941, 27 N.Y.S.2d 637, affirmed 264 A.D. 723, 34 N.Y.S.2d 37, appeal denied 264 A.D. 779, 35 N.Y.S.2d 726. The defendant's breaches of these statutes substantially and proximately caused the plaintiff's injuries asserted below.

Gross Negligence and Willful Misconduct

The defendant's conduct rises to the level of gross negligence and willful misconduct because of the repeated, high-volume, and intentional nature of its broad marketing scheme, which is aimed at the public generally. The defendant's false and misleading mislabeling and

misbranding, in violation of state and federal laws, regulations, and guidance represents an intentional failure to perform a manifest duty to the public. The defendant possesses superior knowledge of the facts and practices that it knows to be the opposite of, or a material departure from, what it advertises. The defendant's misrepresentations are particularly egregious during a time of multiple public-health crises related to meat consumption, including heightened rates of cancer, heart disease, and diabetes, combined with the Coronavirus Pandemic, a zootonic pathogen. All injuries were and are proximately caused by the defendant's acts and omissions as alleged herein.

The Plaintiff's injuries and damages

The plaintiff has been injured monetarily and non-monetarily because of the price and premium paid as a causal consequence of the defendant's misrepresentations and conduct. The plaintiff could have spent his $6.99 on a myriad of different meatless or meat products from suppliers who did not falsely advertise as to animal welfare as did the defendant. For example, the plaintiff could have bought three cans of Bumble Bee Tuna on Sale for $3.00. One can of Bumble Bee tuna contains 7 ounces, so three cans contains 21 ounces—three times more product by weight than the defendant's product. Alternatively, the plaintiff could have bought a 14-ounce pack of tofu for $3.49 or $3.99 at Fairway with the money used to buy the defendant's product. Hundreds of other plausible decisions could have made for the use of the $6.99 paid for the defendant's product.

As to non-pecuniary damages, as a result of the defendant's advertising claims, the plaintiff was caused to feel shock, guilt, helplessness, shame, indignation, mental anguish, anger, betrayal, stress, frustration, torment, and outrage, which have led to sleep disturbances, difficulty concentrating, irritation, and disruption to emotional well-being. The defendant is responsible for the injuries it causes as well as the aggravation of any pre-existing injuries. The defendant is responsible for any aggravated injuries regardless if the plaintiff had a heightened susceptibility to the defendant's acts and omissions.

Punitive Damages Warranted

The defendant's conduct reflects a malicious, wanton, and reckless behavior in complete disregard of the rights of consumers, which warrants the imposition of punitive damages. The defendant's intentional "humanewashing" continues to a) reduce transparency of the real treatment of animals during the animal-production process; b) produce invisibility in its treatment of the subject animals in the meat-production process; c) alters and maintains false and misleading perceptions, beliefs and schemas relating to the real treatment of the subject animals; and d) engages in "psychic numbing" to disconnect consumers from the realities of what takes place animal-production facilities.

Preemptive Law Inapplicable

The defendant may not escape liability on preemption grounds through invocation of federal Acts, such as the Poultry Products Inspection Act (PPIA) since that Act does not regulate in any manner the handling, shipment, or sale of *live* poultry. The PPIA is wholly silent on the treatment of farm animals (including feeding procedures) or methods of slaughter for poultry. The plaintiff's claims are not premised on an ingredient or labeling challenge that would come

within the purview of the PPIA, FMIA, USDA, or any other law or Act. Furthermore, upon information and belief, any documentation that the defendant submitted to the Food Safety and Inspection Services (FSIS) in support of the above representations were deficient, misleading, or materially false. Upon information and belief, Congress has not expressly or impliedly expressed its intent to exclusively occupy the area forming the basis of the plaintiff's claims, or impair New York State's policing power, especially as to the civil remedies sought in this action. Nor is there any conflict between the plaintiff's claims and all applicable federal laws and acts that would deprive the plaintiff from bringing this action.

Dated: November 29, 2021

Defendant's address:

Empire Kosher Poultry, Inc.
247 Empire Drive
Mifflintown, PA 17059

Jesse Langel, Esq.
*Pro Se*
30 Wall Street, 8th Floor
New York, NY 10005
P: 646-290-5600
jesse@langellaw.com

## Exhibit A



